## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **RHODE ISLAND ASSOCIATION OF COASTAL TAXPAYERS,**<br> *Plaintiff,* <br><br>**v.**<br><br>**PETER NERONHA, in his official Capacity as Attorney General of Rhode Island; JEFFREY WILLIS, in his official capacity as Executive Director of the Rhode Island Coastal Resources Management Council; and TERRENCE GRAY, in his official capacity as Director of the Rhode Island Department of Environmental Management,**<br> *Defendants.* | **C.A. No. 23-cv-00278-WES-PAS** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Defendants Peter Neronha, in his official capacity as Attorney General of Rhode Island ("Attorney General Neronha"); Jeffrey Willis, in his official capacity as Executive Director of the Rhode Island Coastal Resources Management Council ("Executive Director Willis"); and Terrence Gray, in his official capacity as Director of the Rhode Island Department of Environmental Management ("Director Gray"; collectively, the "State Defendants"), hereby move to dismiss the Amended Complaint filed by Plaintiff Rhode Island Association of Coastal Taxpayers (the "Association") for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Association lacks standing to pursue its claims against the State Defendants for declaratory and injunctive relief. Moreover, Eleventh Amendment immunity bars this suit because the State of Rhode Island is plainly the real, substantial party in interest.

1

## I.     INTRODUCTION

The Association brings this action in federal court to challenge a Rhode Island state law, H.B. 5174A (the "Act"). *See* ECF No. 11 at ¶¶ 1, 3.  Enacted by Rhode Island's General Assembly in its the 2023 legislative session and signed into law by Governor Daniel McKee on June 26, 2023, the Act clarifies the public's rights and privileges of the shore under Article I, Sections 16 and 17 of the Rhode Island Constitution. *See id.* at 6; *see also* H.B. 5174A (attached herein as Ex. A).  On July 7, 2023, the Association filed its original Complaint; later that same day, the Association filed the currently operative Amended Complaint. *See* ECF No. 1; ECF No. 11.

The Association, which identifies itself as an organization dedicated to "promoting, advocating for, and defending coastal property rights and beach access rules that balance public access needs with property rights[,]" asserts a single claim for "Physical Taking of Private Property Without Just Compensation" based on its allegations that the Act unlawfully creates "public beach" areas on the private property of Association members. ECF No. 11 at 3, 11.  Although the Association asserts that it has multiple members who have been affected by the Act, the only individual member identified by name in the Amended Complaint is Association President David Welch ("President Welch"). *See id.* at ¶¶ 12-14.  According to the Association, "[u]nder color of the Act, members of the public" have already "trespassed on [Association] President Welch's property and other [Association] members' private parcels in the Charlestown and South Kingstown, Rhode Island, coastal area during the long weekend of June 30–July 4, 2023." *Id.* at ¶ 42.

The Association alleges that the State Defendants are properly named as defendants due to their "authority under the Act to implement and administer the Act's provisions." *Id.* at ¶ 18.  In support, the Association relies on portions of the Act that direct the Coastal Resources Management Council ("the CRMC") and the Department of Environmental Management (the

"DEM") to "develop and disseminate information to educate the public and property owners about the rights set out" in the Act and direct the CRMC, the DEM, and the Attorney General to "determine appropriate language and signage details for use at shoreline locations." *Id.* at ¶¶ 16-17. The Amended Complaint seeks declaratory relief against the State Defendants to the effect that Act works an unconstitutional taking and an injunction barring the State Defendants from "enforcing" the Act. *Id.* at 13.

## II.    STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). "There are two species of 12(b)(1) attacks on subject-matter jurisdiction: facial and factual challenges." *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 265 (1st Cir. 2022), cert. granted, 143 S. Ct. 1053 (2023) (citing *Torres-Negrón v. J & N Recs., LLC*, 504 F.3d 151, 162 (1st Cir. 2007)). "If the attack is factual, then the court 'need not accept the plaintiff's allegations as true but can 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quoting *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 61 n.5 (1st Cir. 2021)).

"When the attack is facial, the relevant facts are the well-pleaded allegations in the complaint, which the court must take as true." *Id.* (citing *Toddle Inn Franchising, LLC*, 8 F.4th at 61 n.5). Nonetheless, even against a facial challenge, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). "Neither conclusory assertions nor

unfounded speculation can supply the necessary heft." *Id.* (citing, inter alia, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

## III.    ARGUMENT

### A.  The Association Lacks Standing to Pursue its Claim against the State Defendants

The Court should dismiss the Amended Complaint for lack of subject matter jurisdiction because the Association lacks standing.  The requirement of standing stems from the United States Constitution's restriction of "the federal judicial power to 'Cases' and 'Controversies.'" *United States v. Texas*, 143 S. Ct. 1964, 1969 (2023).  "A plaintiff has standing only if [it] can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)); *see Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (analyzing the "'irreducible constitutional minimum' of standing" as the "three elements" of injury in fact, traceability or causation, and redressability).

Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).  And when an organization asserts standing based on injuries to its members' interests, it must also show that "(1) at least one of its members would have standing to sue as an individual, (2) 'the interests at stake are germane to the organization's purpose,' and (3) individual members' participation is not necessary to either the claim asserted or the relief requested." *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

The Association falters at multiple steps of the standing analysis. Publicly available records, which the Court may properly consider in deciding this Motion to Dismiss, indicate that the Association has failed to identify an individual member on whom it can properly rely for standing. The face of the Amended Complaint also shows that the Association cannot establish either traceability or redressability: although the Act directs the State Defendants to take certain actions, the Association does not—and cannot—assert that its alleged injury has been caused by *any* actions on the part of the State Defendants. Similarly, an injunction restraining the State Defendants from taking the actions set forth in the Act would afford the Association no relief, and a declaratory judgment would be ineffectual and purely advisory.

### i. The Association Has Not Plausibly Alleged that It Has Standing Based on an Injury to a Member's Interests

Under the settled law of associational standing, the Association "may sue based on injuries to its members' interests only if . . . at least one of its members would have standing to sue as an individual[.]"[1] *Animal Welfare Inst.*, 623 F.3d at 25. The Supreme Court has also made clear that organizational plaintiffs must "identify members who have suffered the requisite harm" and cannot rely on speculation or assertions that unnamed individuals have been affected. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *see, e.g., S.S. by S.Y. v. City of Springfield, Mass.*, 332 F.

---

[1] The Association does not appear to allege that it has organizational standing to represent its own interests, and any such argument would not suffice to create standing. "[A]n organization cannot establish standing if the 'only injury arises from the effect of [a challenged action] on the organizations' lobbying activities, or when the service impaired is pure issue-advocacy.'" *Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021) (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093-94 (D.C. Cir. 2015)). "Otherwise, the implication would be that any individual or organization wishing to be involved in a lawsuit could create a[n organization] for the purpose of conferring standing, or could adopt [a mission] so that the [organization] expressed an interest in the subject matter of the case, and then spend its way into having standing." *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 288 (3d Cir. 2014)). In any event, whatever the Association's theory of standing, the same issues of causation and redressability would arise.

Supp. 3d 367, 374 (D. Mass. 2018), aff'd on other grounds sub nom. *Parent/Pro. Advoc. League v. City of Springfield, Mass.*, 934 F.3d 13 (1st Cir. 2019) ("[T]he court considers whether the Amended Complaint adequately establishes that [the organizations] have at least one constituent with individual standing to sue[.]").  As previously stated, the only Association member identified in the Amended Complaint is President Welch. *See* ECF No. 11 at ¶¶ 13, 36-38, 42.  Thus, if President Welch lacks standing, so too does the Association.

Although the Association asserts that President Welch "owns a small home on beachfront property in the Charlestown area of Rhode Island[,]" publicly available records indicate that the property in question is owned by a limited-liability company ("LLC") of which President Welch is a member. *Id.* at ¶ 13; *see* Ex. B (Association Articles of Incorporation); Ex. C (Tax Assessor Records); Ex. D (Stilts, LLC Annual Report); *see also Torres-Negrón*, 504 F.3d at 163 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (explaining that "official public records" may be considered on a motion to dismiss).

Under Rhode Island law, an LLC can own real property and a member of an LLC has no interest in specific LLC property; moreover, an LLC can sue and be sued in its own name, and a member may only bring a derivative action on behalf of the LLC under certain limited circumstances. *See* R.I. Gen. Laws §§ 7-16-4(1), -4(5), -34, -56.  It follows that President Welch, as an individual, does not have a legally cognizable ownership interest in the LLC's beachfront property, and the Association cannot establish associational standing the basis of any alleged injury to President Welch's individual interests.

### ii. The Association's Alleged Injury Is Not Fairly Traceable to any Allegedly Unlawful Conduct of the State Defendants

The Association also lacks standing because its asserted injury is not properly attributable to the actions of the State Defendants. The Association claims that the Act works an unconstitutional taking of its members' property and that "enforcement of the law amounts to an ongoing constitutional violation." ECF No. 11 at ¶ 9. To substantiate its claim of an injury in fact, the Association asserts that "[s]oon after the Act went into effect, individuals trespassed on private property owned by [Association] members under color of the state law." *Id.* at ¶ 6. The Association also asserts that the State Defendants are the proper defendants because of their enumerated duties under the Act to "develop and disseminate information" and "determine appropriate language and signage details for use at shoreline locations." *Id.* at ¶ 17.

Missing from the Amended Complaint, however, is any explanation of how the Association's asserted injury is "fairly traceable" to any "allegedly unlawful conduct" on the part of the State Defendants. *DaimlerChrysler Corp.*, 547 U.S. at 342. Regardless of whether the Association is claiming that the injury was caused by the individuals who "trespassed" on its members' property, or by the "taking" allegedly worked by the passage of the Act itself, neither event can be attributed to the actions of State Defendants. The Association does not claim that the State Defendants have done anything to implement the provisions of Act, or that the alleged violation of Association members' property rights is contingent upon the dissemination of information, the development of signage, or any other future action by the State Defendants. No matter how the Association frames its asserted injury, it cannot trace that injury back to the State Defendants.

With respect to the actions of unnamed individuals, the Supreme Court has held that when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack

of regulation) of someone else, much more is needed" to establish standing than in cases where causation and redressability do not turn on the "'independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-62 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, (1976)); *see Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 48 (1st Cir. 2020) ("The Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties."). "An indirect theory of traceability requires that the government cajole, coerce, command." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir.), cert. denied, 142 S. Ct. 225 (2021); *see Bennett v. Spear*, 520 U.S. 154, 169 (1997) (finding causation based on defendant's "determinative or coercive effect upon the action of someone else").

Here, any "causal chain" between the State Defendants and any injury caused by third-party individuals is not only tenuous but nonexistent. According to the Association, the alleged trespasses began promptly after the passage of the Act and without the State Defendants having taken any steps whatsoever to implement the Act. Under these circumstances, the Association cannot plausibly claim that there is any meaningful connection between those incidents—or any future incidents—and any conduct of the State Defendants.

Tracing the causal chain back a step further, to the "taking" allegedly worked by the Act itself, that action does not change the traceability analysis with respect to the State Defendants. *See, e.g.*, ECF No. 11 at ¶ 56 ("The Act converts every area of private coastal land lying between the [mean high water] and approximately 10 feet inland of the seaweed line into public beach property."). The Association does not and cannot allege that the State Defendants are responsible

for the passage of the Act.[2]  And although it is often the case that state officials are properly named as defendants in suits challenging the laws those state officials enforce, in no sense does the Act empower the State Defendants to "enforce" the alleged taking. *Cf. Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III.").

The Act does not provide for any form of direct "enforcement" of its provisions by the State Defendants, or any other official, whether through criminal liability, civil penalties, or otherwise; it also does nothing to change the State Defendants' respective powers or jurisdictions. Any "enforcement" of the Act, when and if it occurs, would be as a defense raised by individuals against allegations of civil or criminal "trespass" such as those made by the Association. *See* Antonia Noori Farzan, *RI's new beach access law creates controversy, confusion and lawsuits as line is drawn in sand*, The Providence Journal, July 12, 2023 (attached herein as Ex. E), at 1 ("An officer from Charlestown arrived, and, citing the new law, told the security guard that Keeley had the right to be there.").  Causation also cannot rest on a claim that Attorney General Neronha—or any other State Defendant—is responsible for arresting or prosecuting individuals who enter shoreline areas against the wishes of Association members. *See, e.g., United States v. Texas*, 143 S. Ct. 1964, 1970 (2023) ("The States have not cited any precedent, history, or tradition of courts ordering the Executive Branch to change its arrest or prosecution policies so that the Executive

---

[2] The fact that the Association mounts a facial challenge to a statewide law, duly enacted by the General Assembly and signed into law by the Governor, that clarifies and protects the public's enumerated rights under the Rhode Island Constitution reveals that the "real, substantial party in interest" in this suit is the State of Rhode Island. *Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano*, 695 F.3d 83, 103 (1st Cir. 2012).  As a result, and as the State Defendants will discuss in more detail later in this Memorandum, the Association's challenge is barred by the State's Eleventh Amendment immunity from suit in federal court.

Branch makes more arrests or initiates more prosecutions. On the contrary, this Court has previously ruled that a plaintiff lacks standing to bring such a suit."). Because the Association is unable to point to any way in which the State Defendants bear responsibility for the allegedly ongoing "taking" injury, causation is plainly lacking.

### iii.   The Requested Relief Would Not Redress the Association's Alleged Injury

Similarly, because the alleged injury is not traceable to the conduct of the State Defendants, the Association cannot establish that the remedies it seeks would redress that injury. Remedies "ordinarily 'operate with respect to specific parties'" and "do not simply operate 'on legal rules in the abstract.'" *California v. Texas*, 141 S. Ct. at 2115 (quoting *Murphy v. National Collegiate Athletic Assn.*, 138 S. Ct. 1461, 1486, (2018) (Thomas, J., concurring)). To establish redressability, a plaintiff must show that "it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Merit Construction Alliance v. City of Quincy*, 759 F.3d 122, 127 (1st Cir. 2014) (quoting *Lujan*, 505 U.S. at 561). Moreover, "[r]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen*, 143 S. Ct. 1609, 1639 (2023) (emphasis in original) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment)).

Beginning with the Association's request for injunctive relief, enjoining the State Defendants "from enforcing the Act" would do nothing to redress the asserted injury. ECF No. 11 at 13. As discussed, the Act does not provide for any direct enforcement of its provisions by the State Defendants. Because the State Defendants did nothing to put the Act into legal effect or to enable "individuals [to] trespass[ ] on private property owned by [Association] members under color of [that] state law[,]" there is no reason to believe that enjoining the State Defendants from

acting will have any impact on the ongoing injury alleged. ECF No. 11 at ¶ 6; *cf. R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 30 (1st Cir. 1999) (finding standing where trade association's injury could "be traced directly to the looming enforcement" of a state law criminalizing commercial use of public records and could "be fully redressed by declaratory and injunctive relief" against the Attorney General).

Nor is it likely, rather than purely speculative, that enjoining the State Defendants' limited duties under the Act to "develop and disseminate information" or "determine appropriate language and signage details" would afford the Association any relief. Whatever the State Defendants may or may not say in the future, the language of the Act regarding the public's rights and privileges of the shore is already public knowledge.[3] *See, e.g.*, Antonia Noori Farzan, *Here's everything to know about RI's new shoreline access law before you head to the beach*, The Providence Journal, July 18, 2023 (attached herein as Ex. F); *see also McGee v. Stone*, 522 A.2d 211, 215 (R.I. 1987) (collecting cases for proposition that individuals are presumed to know their rights under the law).

More fundamentally, the fatal flaw in the Association's requested injunction is that it would only be legally binding with respect to the State Defendants. The public at large, including the unidentified "individuals" mentioned in the Amended Complaint, are "not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit

---

[3] It is also worth noting the troubling First Amendment implications of what the Association is requesting: a federal injunction that would essentially impose a content and viewpoint based prior restraint on the speech of state officials and their agencies. *See, e.g.*, *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015) ("[A]s a general matter, when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position. In doing so, it represents its citizens and it carries out its duties on their behalf."); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) (noting the "heavy presumption against [the] constitutional validity" of "[a]ny system of prior restraint"). Sufficient for the redressability and standing analysis, however, is the fact that the information the Association seeks to suppress is already widely known.

produced." *Haaland*, 143 S. Ct. at 1639 (quoting *Lujan*, 504 U.S. at 569); *see Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) (quotation marks and citation omitted) ("Consistent with historical practice, a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions. But under traditional equitable principles, no court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves[.]"). The same is true for the local police agencies that may be called upon to resolve disputes as to specific applications of the Act. *See* Ex. E at 1("An officer from Charlestown arrived, and, citing the new law, told the security guard that Keeley had the right to be there.").

The Association's request for a declaratory judgment "suffers from the same flaw." *Haaland*, 143 S. Ct. at 1639. Although the Association seeks broadly phrased declarations "that enforcement of the Act takes a public easement from [Association] members" and "that the Act unconstitutionally takes [Association] members' properties for public beach use[,]" those declarations would only be binding with respect to the parties to the Court's judgment: namely, the State Defendants. ECF No. 11 at 13; *see Haaland*, 143 S. Ct. at 1639 (finding a "declaratory judgment powerless to remedy the alleged harm" because "the officials who matter" were "nonparties who would not be bound by the judgment"); *cf. Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original) (discussing test for 'prevailing party' under 42 U.S.C. § 1988) ("Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit . . . . what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion . . . is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.").

It also bears repeating that the requirements of causation and redressability, like standing itself, are not simply "troublesome hurdle[s] to be overcome if possible so as to reach the 'merits'

of a lawsuit which a party desires to have adjudicated[.]" *United States v. Texas*, 143 S. Ct. at 1969 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 476 (1982)).  "By ensuring that a plaintiff has standing to sue, federal courts 'prevent the judicial process from being used to usurp the powers of the political branches.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).  Because the Association cannot show that its requested relief would amount to anything more than an advisory opinion as to the validity of the Act, the Association cannot establish standing, and the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

**B.  The Association's Suit is Barred by Rhode Island's Eleventh Amendment Immunity**

The Court should also dismiss the Amended Complaint for lack of subject matter jurisdiction for the independent reason that the State of Rhode Island's sovereign immunity bars the Association's claim under the Eleventh Amendment.  As the standing analysis shows, if the relief the Association seeks is to be more than an ineffectual (and impermissible) advisory opinion, that relief would need to have legal force against not only the State Defendants, but Rhode Island— and its people—as a whole.  As a result, and even though only the State Defendants are named in the Amended Complaint, "the real, substantial party in interest" in this case is plainly the State of Rhode Island. *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).  Eleventh Amendment immunity thus precludes the Association from proceeding in federal court, and the Association cannot avoid that fact by invoking the fiction of *Ex parte Young*. *See id.*

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health*, 142 S. Ct. at 532.  As explained by the First Circuit, "the Eleventh Amendment bars federal suits by citizens against the state or state agencies[.]" *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000); *see Regents of the Univ. of*

*California v. Doe*, 519 U.S. 425, 429 (1997) (citations omitted) ("[The Eleventh Amendment] encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). The two primary exceptions to Eleventh Amendment immunity occur when Congress has properly abrogated a state's sovereign immunity or when the state has waived its immunity by consenting to suit in federal court. *See Davidson v. Howe*, 749 F.3d 21, 28 (1st Cir. 2014).

Neither exception applies in this case. "A state's consent to suit in the federal courts must be 'unequivocally expressed.'" *Acevedo López v. Police Dep't of Com. of P.R.*, 247 F.3d 26, 28 (1st Cir. 2001) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n. 8 (1984)). Although Rhode Island has waived a portion of its sovereign immunity from tort claims under General Laws § 9-31-1, it has not waived its immunity with respect to "suits involving traditional governmental activities" or "the discretionary administrative acts and omissions of the state's departments, commissions, boards, or the officials thereof, acting in their representative capacities." *Bergemann v. State of R.I.*, 958 F. Supp. 61, 68 (D.R.I. 1997) (quoting *Healey v. Bendick*, 628 F. Supp. 681, 695 (D.R.I. 1986)); *see Healey*, 628 F. Supp. at 693–95 (D.R.I. 1986) (holding that DEM director and members of the Marine Fishery Council were immune to plaintiff's challenge to state shell fishing regulations). And any waiver under § 9-31-1 is limited to actions that are "traditionally tortious." *Allendale Leasing, Inc. v. Stone*, 614 F. Supp. 1440, 1451 (D.R.I. 1985), judgment aff'd, 788 F.2d 830 (1st Cir. 1986). A claim that the State of Rhode Island, by passing the Act, has taken Association members' private property for public use without just compensation "is not an action sounding in tort because '[a] private person could neither commit, nor be sued in an action *ex delicto* for [this] type and kind of activit[y].'" *Bergemann*, 958 F. Supp. at 69 (D.R.I. 1997) (quoting *Healey*, 628 F. Supp. at 694–95); *see Allendale Leasing*, 614

14

F.Supp. at 1451 ("The state actions that the plaintiffs challenge—alleged *ultra vires* official acts and improper delegation of state power—are uniquely State acts. A private individual may simply not commit and be sued in tort for such acts.") *see also Ryan v. State, Dep't of Transp.*, 420 A.2d 841, 843 (R.I. 1980) (holding that in suits brought against Rhode Island under § 9-31-1, "plaintiffs must show a breach of some duty owed them in their individual capacities and not merely a breach of some obligation owed the general public").

As for abrogation, the "overwhelming weight of authority among the circuits" is that "sovereign immunity trumps the Takings Clause where, as here, the state provides its own remedy for an alleged violation." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 & n.7 (2d Cir. 2023) (citing decisions from the First, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits); *cf. Marek v. Rhode Island*, 702 F.3d 650, 654 (1st Cir. 2012) (holding that Rhode Island courts recognize an inverse condemnation remedy that "constitutes an adequate procedural pathway to just compensation" for alleged takings). The Supreme Court has also made clear that 42 U.S.C. § 1983 "was not intended to abrogate a State's Eleventh Amendment immunity." *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985). And although the Supreme Court held in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), "that a plaintiff may 'bring a 'ripe' federal takings claim in federal court,' without first exhausting state remedies," every Circuit Court of Appeals to consider the issue has held that *Knick* "did not change states' sovereign immunity from takings claims for damages in federal court, so long as state courts remain open to those claims." *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir.), cert. denied, 143 S. Ct. 374 (2022) (quoting *Knick*, 139 S. Ct. at 2170) (citing decisions from the Fourth, Fifth, Sixth, and Tenth Circuits).

In *Ex parte Young*, the Supreme Court "carved out" a further "exception to Eleventh Amendment state immunity that allows federal courts to enjoin state officials to conform their

future conduct to the requirements of federal law[.]'" *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 28 (1st Cir. 2005) (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)). Although the Supreme Court has described the *Ex parte Young* doctrine as involving a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective[,]" it has also stood "willing to police abuses of the doctrine that threaten to evade sovereign immunity." *Stewart*, 563 U.S. at 255, 256 (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("The real interests served by the Eleventh Amendment are not to be sacrificed to empty mechanics of captions and pleading."). "Also, there are 'certain types of cases that formally meet the [*Ex parte*] *Young* requirements of a state official acting inconsistently with federal law but that stretch that case too far and would upset the balance of federal and state interests that it embodies.'" *Town of Barnstable v. O'Connor*, 786 F.3d 130, 139 (1st Cir. 2015) (quoting *Papasan v. Allain*, 478 U.S. 265, 277 (1986)). The Association's citation of *Ex parte Young* to justify its suit against the State Defendants is thus unavailing for the reasons further explained below. *See* ECF No. 11 at ¶ 18.

### i. The Association's Claim Does Not Meet the Prerequisites Needed to Properly Invoke the *Ex parte Young* Doctrine

Because the *Ex parte Young* doctrine rests on the fiction "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes[,]" the doctrine is "limited to that precise situation, and does not apply when the state is the real, substantial party in interest[.]" *Stewart*, 563 U.S. at 255 (internal quotation marks and citation omitted). A crucial restriction on the doctrine is its limitation to "cases in which a violation of federal law *by a state official is ongoing* as opposed to cases in which federal law has been violated at one time or over a period of time in the past[.]" *Whalen*,

397 F.3d at 29 (emphasis added) (quoting *Papasan*, 478 U.S. at 277-78).  In addition, *Ex parte Young* applies only in "cases in which the relief against the state official directly ends the violation of federal law[,] as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law[.]" *Papasan*, 478 U.S. at 278; *see Green v. Mansour*, 474 U.S. 64, 68 (1985) ("[C]ompensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.").

Despite its assertion that *Ex parte Young* applies because the State Defendants "have authority under the Act to implement and administer the Act's provisions[,]" the Association's requested relief does not fall within the narrow confines of the doctrine. ECF No. 11 at ¶ 18.  Any attempt to frame the injunction as simply preventing the State Defendants "from enforcing the Act" in the future suffers from the same basic problem that plagued the redressability analysis: the Association cannot claim that preventing the State Defendants from performing their duties under the Act will directly end, or even affect, the allegedly ongoing violation. ECF No. 11 at 13.  Those duties consist of disseminating "information to educate the public and property owners about the rights set out" in the Act and determining "appropriate language and signage details for use at shoreline locations." *Id.* at ¶¶ 16-17.  As previously discussed, in no other sense does the Act charge the State Defendants with "enforcing" the Act against the Association and its members.  To characterize the promulgation of information about a state law that clarifies the public's rights under the state constitution as the "enforcement" of that law—and an ongoing violation of federal law—for the purposes of *Ex parte Young* would be to stack a fiction upon a fiction. *See Shell Oil Co. v. Noel*, 608 F.2d 208, 212 (1st Cir. 1979) ("Of critical importance are the nature of the statute and the state officer's connection with that statute.").

As for the requested declaratory judgments, under *Ex parte Young*, declaratory relief cannot be granted "'independent of' an appropriate form of prospective relief." *Doucette v. Ives*, 947 F.2d 21, 31 (1st Cir. 1991) (quoting *Green*, 474 U.S. at 71). In this case, if the Association's requested declarations that the Act worked an unconstitutional taking on its members' properties are to be anything more than an advisory opinion, they must be prospectively binding against not only the State Defendants, but the State of Rhode Island, its cities and towns, and the public whose rights the Act was intended to clarify. ECF No. 11 at 13. The Association cannot maintain that by seeking such relief it would be asking the Court to do anything other than "giv[e] orders directly to a State," which is prohibited by the Eleventh Amendment. *Hutto v. Finney*, 437 U.S. 678, 690 (1978). "On the other hand, if the federal judgment would not have such an effect, then it would 'serv[e] no useful purpose as a final determination of rights.'" *Green*, 474 U.S. at 71 (quoting *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

### ii. *Ex parte Young* is Inapplicable because the Association's Suit is the Functional Equivalent of a Quiet Title Action

Even if the *Ex parte Young* doctrine might otherwise apply, it is unavailable in this case because the Association's claim is "close to the functional equivalent of quiet title." *Pavlock*, 35 F.4th at 591 (quoting *Coeur d'Alene Tribe*, 521 U.S. at 282). In *Coeur d'Alene Tribe*, the Supreme Court held that the Eleventh Amendment barred the Coeur d'Alene Tribe's suit for declaratory and injunctive relief against Idaho state officials because the Tribe sought to establish its ownership and authority over the "banks and submerged lands" of Lake Coeur d'Alene and "various [connected] rivers and streams" in the state. *Coeur d'Alene Tribe*, 521 U.S. at 264, 282; *see id.* at 288 (O'Connor, J., concurring) ("The Coeur d'Alene Tribe of Idaho seeks declaratory and injunctive relief precluding Idaho officials from regulating or interfering with its possession of submerged lands beneath Lake Coeur d'Alene.").

18

Despite the Tribe's attempt to invoke *Ex parte Young*, the Supreme Court found that doctrine to be inapplicable given Idaho's "special sovereignty interests" in maintaining title to, and authority over, the "disputed lands and waters." *Id.* at 281.  Describing Idaho's sovereign interests, the Supreme Court noted that "submerged lands" have long been endowed with a "unique status in the law" and "infused with a public trust the State itself is bound to respect." *Id.* at 283; *see id.* at 285 (noting that "public aspects of submerged lands" include the public's "right of passage and the right to fish" and that the "perceived public character of submerged lands . . . underlies and informs the principle that these lands are tied in a unique way to sovereignty").  And despite efforts by plaintiffs in other cases to paint *Coeur d'Alene Tribe* as a "one-way, one-day case with no further applicability," both the Supreme Court's holding and the case's animating principles continue to have vital force. *Pavlock*, 35 F.4th at 591; *see Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1073-74 (9th Cir. 2014) (applying *Coeur d'Alene Tribe* to bar plaintiff's federal suit challenging Alaska's assertion of ownership over "streambeds beneath navigable waters"); *Pavlock v. Holcomb*, 532 F. Supp. 3d 685, 696-97 (N.D. Ind. 2021), aff'd as modified, 35 F.4th 581 (7th Cir. 2022) (applying *Coeur d'Alene Tribe* to bar a federal suit that "strikes at the heart of special sovereignty interests as it requires the determination of exclusive title as to where State property ends and private property begins" on the shores of Lake Michigan).

By its own terms, the Association's claim is the functional equivalent of a quiet title action against the State of Rhode Island.  Among other descriptions of the challenged state law, the Amended Complaint alleges that the Act "converts every area of private coastal land lying between the [mean high water line] and approximately 10 feet inland of the seaweed line into public beach property." ECF No. 11 at ¶ 56.  The Association also claims that its members own title to portions of the coastal areas described in the Act and that this suit against the State Defendants for

declaratory and injunctive relief is brought to vindicate those members' rights to "exclusive possession and use" of those areas. *Id.* at ¶ 44.

The Association's allegations, and its requested relief, bring its claim within the exception to *Ex parte Young* recognized in *Coeur d'Alene Tribe*. *See Coeur d'Alene Tribe*, 521 U.S. at 289 (O'Connnor, J., concurring) ("A federal court cannot summon a State before it in a private action seeking to divest the State of a property interest."); *cf. Balash*, 765 F.3d at 1073 ("Plaintiffs' action implicates precisely the same sovereignty interests as in *Coeur d'Alene* [*Tribe*] itself. . . . Plaintiffs allege they are 'fee simple owners' of the streambeds beneath the navigable waters, seek to lift the 'cloud' from their properties, and request that a federal court return 'full use and enjoyment of their property.'"). The fact that the Association vigorously asserts the primacy of its members' ownership interests does not change the analysis. *See Coeur d'Alene Tribe*, 521 U.S. at 288 (acknowledging Tribe's own strong interest in the disputed lands); *Anderson-Tully Co. v. McDaniel*, 571 F.3d 760, 763 (8th Cir. 2009) (rejecting plaintiff's contention that *Coeur d'Alene Tribe* was "distinguishable because the Coeur d'Alene Tribe was suing to *obtain* recognition of its ownership of the lake bed and submerged lands, whereas in this case [plaintiff] is suing to *retain* recognition of its ownership of the disputed waters").

### iii. *Ex parte Young* is Inapplicable because the Association's Suit Directly Implicates Rhode Island's Sovereign Interests in Enforcing its Constitution

Finally, even setting aside the "quiet title" issue, the State of Rhode Island is plainly the "real, substantial party in interest" in this case. *Stewart*, 563 U.S. at 255. The Association directly attacks the legality of the Act, a state law enacted by the General Assembly pursuant to multiple provisions of the Rhode Island Constitution that define and protect the rights and privileges of the people of Rhode Island. In turn, the Act directly references those pre-existing public rights and privileges and seeks to clarify and codify those rights so as to ensure their continued viability. *See*

Ex. A at 1-4. The relief the Association seeks—an enforceable declaration by a federal court that the General Assembly was in fact powerless to vindicate the public's long-standing rights and privileges of the shore under the Rhode Island Constitution—would thus affect the "dignity and status" of Rhode Island's sovereign interests "in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Coeur d'Alene*, 521 U.S. at 287.

Under these circumstances, the Court should decline the Association's invitation to mask its suit against the State of Rhode Island under the guise of *Ex parte Young*. "To do otherwise 'would be to adhere to an empty formalism.'" *Stewart*, 563 U.S. at 256 (quoting *Coeur d'Alene*, 521 U.S. at 270).

## IV.    CONCLUSION

For the reasons stated above, the State Defendants respectfully request that the Court dismiss the Association's Amended Complaint for lack of subject matter jurisdiction.

Respectfully Submitted,

Defendants**,**
**PETER NERONHA, in his official capacity as Attorney General of Rhode Island; JEFFREY WILLIS, in his official capacity as Executive Director of the Rhode Island Coastal Resources Management Council; and TERRENCE GRAY, in his official capacity as Director of the Rhode Island Department of Environmental Management,**

By:
**PETER F. NERONHA**
**ATTORNEY GENERAL**

*/s/ Jeff Kidd*

Sarah W. Rice (#10465)
Assistant Attorney General
Jeff Kidd (#10416)
Special Assistant Attorney General
150 South Main St.
Providence, RI 02903
Tel: (401) 274-4400
Fax: (401) 222-2995
srice@riag.ri.gov
jkidd@riag.ri.gov

## CERTIFICATE OF SERVICE

I hereby certify that I filed the within document via the ECF filing system on July 31, 2023 and that a copy is available for viewing and downloading.

*/s/ Jeff Kidd*

22