UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND ASSOCIATION OF COASTAL TAXPAYERS,<br><br>          Plaintiff,<br><br>v.<br><br>PETER NERONHA, in his official capacity as Attorney General of Rhode Island; JEFFREY WILLIS, in his official capacity as Executive of the Rhode Island Coastal Resources Management Council; and TERRENCE GRAY, in his official capacity as Director of the Rhode Island Department of Environmental Management,<br><br>          Defendants. | Case No. 1:23-cv-00278-WES-LDA |

**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS (42 U.S.C. § 1983)**

INTRODUCTION

  1. Rhode Island Association of Coastal Taxpayers (RIACT), a group of people who own beachfront property and hold private property rights along Rhode Island's Atlantic coastline, bring this complaint against state officials to halt the ongoing, unconstitutional violation of their federally protected private property rights.

  2. Many of RIACT's members own title, in fee simple, to beachfront property in Rhode Island. Under their titles and the common law of the state, the shorelands lying seaward of the mean high water (MHW) line are public, but the lands located inland of the MHW line are held in private ownership.

1

3. The state recently enacted a law, H. 5174 (the "Act"), which abrogates the traditional MHW line boundary separating public and private beach areas and sets a new boundary at a more inland location, thereby expanding the public beach area inland into private property. *See* Exhibit 1 (the Act).

4. The Act specifically expands the public beach area inland to a line located 10 feet inland of the "recognizable high tide" line, which is itself typically located at the seaweed, shell, debris, oil, or scum line left by high wash of the waves on the beach ("seaweed line"). The Act accordingly converts a large strip of privately owned land lying between the MHW line and the "10-feet from the seaweed line" into a public beach area. The primary basis for the change is that the state legislature believes the current public beach area is not expansive enough to allow public use of the shore at all locations along the Atlantic coast, at all times of the day.

5. The Act's landward extension of the public beach authorizes members of the public to access, occupy, invade, and use private property lying between the MHW line and 10 feet inland of the seaweed line, including property owned by RIACT's members, under color of state law.

6. Soon after the Act went into effect, individuals trespassed on private property owned by RIACT members under color of state law.

7. Although the area lying between the MHW line and 10 feet inland of the seaweed line is subject to public beach use under the Act, title remains in the hands of private owners, like RIACT's members. Therefore, in extending the public beach to 10 feet inland of the seaweed line, and onto private property, the law effectively imposes an easement on private parcels. The encumbrance injures RIACT members' right to exclude non-owners and the privacy, value, use, and marketability of their properties.

8. Indeed, because the public easement imposed on private beach lands by the Act is bounded by migratory lines (i.e., the seaweed line), the easement itself is also migratory. This means that, when natural events push the seaweed line farther inland, the public beach area created by the Act will also move farther inland onto previously unburdened parcels of private, coastal property. The Act's expansion of the public beach to 10 feet inland of a migratory seaweed line operates as a mechanism for a perpetual, unpredictable conversion of private coastal land into public beach areas.

9. While public beach access may be important to state legislators and officials, they may not simply redefine private shorelands as a "public beach" by the stroke of a pen, consistent with the Takings Clause of the Fifth Amendment. The Act constitutes a taking of property in violation of the United States Constitution and creates an ongoing violation of RIACT members' constitutional rights.

10. Damages are not an adequate or available remedy to redress state officials' enforcement of a statewide, migratory public beach easement on private property and RIACT does not seek damages. It seeks an injunction and declaratory relief prohibiting state officials from enforcing the Act because it violates the United States Constitution.

**THE PARTIES**

11. RIACT is an association organized under the laws of Rhode Island for the purposes of promoting, advocating for, and defending coastal property rights and beach access rules that balance public access needs with property rights.

12. RIACT's members can generally be separated into two classes: (1) members that own beachfront property along Rhode Island's Atlantic coastline and Narragansett Bay, whose title includes land lying between the MHW line (or mean high tide line) and 10 feet inland of the

high tide/seaweed line (an area the Act impresses with a public beach), and (2) members who do not own beachfront property, but who claim interests in the 10 foot + area the Act impresses with a public beach through their association with coastal homeowner associations and "fire districts" that themselves own or control beachfront property burdened by the Act.

13. Many members of RIACT hold title to beachfront land that extends to the mean high tide line, or to "the Atlantic ocean," which by state law also means that their title extends as far as the MHW line. Some RIACT members own title to the "high water" line.

14. For example, Stilts, LLC, a Rhode Island limited liability corporation and member of RIACT, owns a small home on beachfront property in the Charlestown area of Rhode Island. RIACT President David Welch lives in the home. Title to this property extends seaward to the MHW line, and includes land lying between the MHW line and 10 feet inland of the seaweed line (effectively the home's "backyard"). But this private land is now a public beach under the Act. *See* Exhibit 2 (Stilts, LLC, title documents).

15. RIACT is governed by a four-member board of directors and three officers, a President, Vice-President, and Treasurer/Secretary.

16. Defendants include three state officials: Peter Neronha, in his official capacity as Attorney General of Rhode Island; Jeffrey Willis, in his official capacity as Executive Director of the Rhode Island Coastal Resources Management Council (CRMC); and Terrence Gray, in his official capacity as Director of the Rhode Island Department of Environmental Management (DEM).

17. Under R.I. General Laws § 46-23-7(a)(2), CRMC "staff" are "empowered to issue written cease and desist orders in any instance where activity is being conducted which constitutes a violation of any provisions of this chapter." The challenged portions of the Act were enacted as

R.I. General Laws § 46-23, within the chapter of the General Laws which governs the Coastal Resources Management Council. Thus, as head of the CRMC staff, and a CRMC staff member himself, Defendant CMRC Executive Director Willis has authority to address and remedy an alleged violation of the Act.

18. R.I. General Laws § 11-44-24 prohibits obstructing or blocking a public right-of-way to the water. It states: "Every person who shall obstruct or block or cause any obstruction of any public rights-of-way to water areas of the state shall be imprisoned not exceeding one year or be fined not exceeding five hundred dollars ($500)." Defendant Attorney General Neronha has authority to enforce R.I. General Laws § 11-44-24.

19. The Act itself states: "The coastal resources management council (CRMC) in collaboration with the department of environmental management, shall develop and disseminate information to educate the public and property owners about the rights set out in this section."

20. The Act further states that "[t]he CRMC in collaboration with the department of environmental management, and the attorney general, shall determine appropriate language and signage details for use at shoreline locations."

21. The Defendant state officials thus have authority under the Act to implement and enforce the Act's provisions. The officials are accordingly subject to an official capacity suit for equitable relief from the unconstitutional enforcement of the Act under *Ex parte Young*, 209 U.S. 123 (1908).

**JURISDICTION AND VENUE**

22. The claims in this action arise under the Fifth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment. The Court has

jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. A remedy is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201.

23. Venue is proper in this Court because this action concerns private properties located in Rhode Island and enactment of a Rhode Island law, both of which are within the jurisdiction of the Rhode Island District Court.

## BACKGROUND LEGAL PRINCIPLES

24. Rhode Island beaches are generally characterized by the following features: (1) the mean low tide (MLT) line, also called the mean low water mark, calculated as the average of low tides over an approximately 19-year period. The MLT is typically located near open waters; (2) the mean high water (or mean high tide) line which is calculated as an average of high tides over an approximately 19-year period; (3) the high water or high tide line, a mark created by the highest wash of the daily waves and often located by the seaweed, debris, or wrack line. The high tide/seaweed line is inland of the MHW line; and (4) the first line of vegetation that spreads continuously inland.

25. The land located between the MHW and 10 feet inland of the seaweed line is a strip or ribbon of predominantly dry land, such as dry sand beach land or other mostly dry terrain.

26. Under the common law of Rhode Island, the state owns or controls the wet beach area that extends from the open ocean waters to the MHW line.

27. But coastal areas lying *landward* of the MHW line are part of the property titles held by people, like RIACT's members, who own beachfront land along Rhode Island's Atlantic coast.

28. In 2021, a special legislative commission, the Shoreline Commission, was created to study "lateral" shoreline access in the state and make recommendations on the issue to the Rhode

Island House of Representatives. In a Final Report summarizing its views and recommendations, the Special Commission adopted as findings certain expert testimony related to the operation of the MHW line and high water/seaweed line as a public/private beach boundary, including that the high tide/seaweed line is always more landward than the MHW line. *See* Exhibit 3 (Final Report).

29. On June 26, 2023, the Governor of Rhode Island signed a law passed in the 2023 legislative session entitled, "An Act Relating to Waters and Navigation—Coastal Resources Management Council."

30. The Act suddenly and dramatically altered Rhode Island's common law related to beach property boundaries, with the effect of extending the public beach into traditionally private areas. *See* Exhibit 1.

31. The Act declares, in part, that "[t]he general assembly finds that the lack of a workable, readily identifiable right of access to the shore by the public has led to confusion, conflict and disputes between those attempting to exercise their rights and privileges to the shoreline and the rights of landowners whose property abuts the shore," and that "[t]he general assembly also recognizes that its public trust duty to preserve the public's rights and privileges of the shore is a progressive and evolving doctrine that is expected to adjust to changing circumstances."

32. The Act further declares, in part, that

> [t]he general assembly accepts the conclusions of the coastal scientists from the University of Rhode Island who have documented that: (i) The MHW line is not a visible feature that can be seen on the beach like a watermark or debris line. MHW is an elevation, calculated from the average of all the high tides, two (2) per day in Rhode Island, over a nineteen (19) year period and the MHW line is where this elevation intersects the beach profile. It cannot be determined by the naked eye and requires special surveying expertise and equipment, thereby making it impossible for the general public to know where the line is. The MHW line may change on a daily basis. Because the profile or shape of the beach changes constantly, as waves

move sand onshore, offshore and alongshore, the location where MHW intersects the beach likewise changes.

33.     The Act then states:

use of the MHW for determining shoreline access has restricted the public's rights. Retaining the MHW line rule employed by the court in 1982 results in the public only having meaningful shoreline access at or near the time of low tide, if at all, at some locations. Thus, the constitutional right and privileges of the shore delineated in the 1986 Constitutional Convention amendments have become illusory under such a rule. . . . Insofar as the existing standard for determining the extent of the public's access to the shore is unclear and not easily discernable, due to the lack of a boundary that can be readily seen by the casual observer on the beach, resulting in confusion, uncertainty and even confrontation, the General Assembly is obligated to provide clarity. This enactment constitutes the necessary clarification in accordance with Article I Section 17 of the Rhode Island Constitution.

34.     The Act then redefines the private/public beach boundary as follows:

For purposes of this chapter, the "recognizable high tide line" means a line or mark left upon tidal flats, beaches, or along shore objects that indicates the intersection of the land with the water's surface level at the maximum height reached by a rising tide. The recognizable high tide line may be determined by a line of seaweed, oil or scum along shore objects, a more or less continuous deposit of fine shell or debris on the foreshore or berm, other physical markings or characteristics, or other suitable means that delineate the general height reached by the water's surface level at a rising tide. If there is more than one line of seaweed, oil, scum, fine shell, or debris, then the recognizable high tide line means the most seaward line. In the absence of residue seaweed or other evidence, the recognizable high tide line means the wet line on a sandy or rocky beach. The line encompasses the water's surface level at spring high tides and other high tides that occur with periodic frequency, but does not include the water's surface level at storm surges in which there is a departure from the normal or predicted reach of the water's surface level due to the piling up of water against a coast by strong winds, such as those accompanying a hurricane or other intense storms.

35.     The Act declares that the public now has access and use rights on coastal property, up to 10 feet inland of the high tide/seaweed line:

the public's rights and privileges of the shore may be exercised, where shore exists, on wet sand or dry sand or rocky beach, up to ten feet (10') landward of the recognizable high tide line; provided, however, that the public's rights and privileges of the shore shall not be afforded where no passable shore exists, nor on land above the vegetation line, or on lawns, rocky cliffs, sea walls, or other legally constructed shoreline infrastructure. Further, no entitlement is hereby created for

the public to use amenities privately owned by other persons or entities, including, but not limited to: cabanas, decks, and beach chairs.

36. The Act concludes by charging several state agencies with the duty to implement the Act, stating: "The coastal resources management council (CRMC) in collaboration with the department of environmental management (DEM), shall develop and disseminate information to educate the public and property owners about the rights set out in this section." And that "[t]he CRMC in collaboration with the DEM, and the attorney general, shall determine appropriate language and signage details for use at shoreline locations."

37. The Act does not include any provision or means to compensate owners of private beachfront lands that are regulated, declared, or treated as a public beach area under color of the Act.

**THE EFFECT OF THE ACT ON PRIVATE PROPERTY**

38. Many of RIACT's members own residentially developed beachfront parcels along the Rhode Island shoreline. In law and in fact, many of their titles extend seaward to the MHW line and include and encompass the area of land lying between the MHW line and 10 feet inland of the seaweed line.

39. For many RIACT members, the Act's extension of a publicly accessible beach area up to 10 feet inland of the high tide/seaweed line allows the public to access and occupy their private "backyards" and opens their residential life to the constant presence of strangers, destroying privacy and raising safety concerns.

40. RIACT member and President David Welch is the sole member of a limited liability corporation, Stilts, LLC (Stilts). Stilts is a member of RIACT which owns a small, single-family home next to the Atlantic shore in Charlestown, Rhode Island. Under its property title, portions of

Stilts' lot extends seaward to the MHW line and, thus, Stilts' title includes land between the MHW line and 10 feet inland of the seaweed line.

41. The beach land lying between the usual seaweed line and 10 feet inland of that line (now subject to public beach use under the Act) is immediately adjacent to, and almost under, portions of Stilts' home.

42. Similarly, RIACT member Joseph Simonelli owns a beachfront home at 115 Atlantic Avenue in Westerly, Rhode Island. Title to a portion of his property extends to "the Atlantic ocean." Exhibit 4 at 2. By operation of state law, his title accordingly extends to the MHW line. Simonelli's title thus includes land lying between the MHW line and 10 feet inland of the seaweed line.

43. There are no recorded public beach access easements or rights-of-way on the title to the land owned by Stilts, Simonelli, or other RIACT beachfront property owners. RIACT beachfront property owners have never dedicated their beach or shoreline properties to public beach use.

44. RIACT beachfront property owners purchased their residentially developed coastal property with the understanding, right, and expectation of using their property for private, exclusive use, including for private family beach gatherings.

45. The Act authorizes the general public to enter, access, and use RIACT members' private properties for unspecified public uses and access, and for indefinite periods of time.

46. Members of the public have already trespassed on RIACT members' beachfront properties under color of the Act.

10

47. Under color of the Act, members of the public trespassed on Stilts' property and other RIACT members' private parcels in the areas of Charlestown and South Kingstown during the long weekend of June 30–July 4, 2023.

48. No provision of the Act limits the time, duration, or nature of the activities the public may engage in on private land, like that owned by RIACT's members, between the MHW and 10 feet inland of the seaweed line.

## DECLARATORY RELIEF ALLEGATIONS

49. Under the Fifth and Fourteenth Amendments to the United States Constitution, Plaintiff members have a federal right to be free from an uncompensated taking of their right to exclusive possession and use of their property.

50. State officials have authority to enforce the Act against RIACT members and others who own beachfront property between the MHW line and 10 feet inland, and address violations of the Act.

51. There is a justiciable controversy as to whether enforcement of the Act to impose a "public beach" on Plaintiff members' private land amounts to a taking of property for public use, without just compensation.

52. A declaratory judgment as to whether the Act violates RIACT members' right to be free from an uncompensated taking of property will serve a useful purpose in clarifying and settling the legal relations between the parties.

53. A declaratory judgment as to whether the Act takes property without just compensation will terminate and afford relief from the uncertainty and insecurity giving rise to this controversy.

**INJUNCTIVE RELIEF ALLEGATIONS**

54. RIACT has no available or adequate remedy at law to redress the ongoing violation of RIACT members' constitutionally protected property rights occurring under color of the Act.

55. There is a substantial likelihood that RIACT will succeed on their claim that the Act unconstitutionally converts its members' properties into a "public beach" area or easement without just compensation.

56. RIACT has no adequate remedy at law to remedy the taking of their property under color of the Act. Its members will suffer irreparable injury absent a preliminary and permanent injunction halting the violation of RIACT members' constitutional rights and restraining state officials from implementing and enforcing the Act to impose a migratory public beach easement on private beachfront property.

57. The injury to RIACT—the unconstitutional imposition of a public beach and resulting taking of its members' property interests without compensation—outweighs any harm the injunction might cause state officials.

58. An injunction halting the ongoing violation of federal constitutional rights occurring under color of the Act will not impair, but rather enhance, the public interest.

**LEGAL CLAIMS**

**COUNT I**

**Physical Taking of Private Property**
**Without Just Compensation**

59. All prior allegations are hereby included and incorporated in this claim.

60. The authorization of a "public beach" or public beach easement on private land constitutes an ongoing physical invasion and occupation of property that is per se unconstitutional without concurrent provision of just compensation.

12

61. The Act converts every area of private coastal land lying between the MHW and 10 feet inland of the seaweed line into publicly accessible beach property.

62. In creating a public beach area on beach land up to 10 feet inland of the seaweed line, the Act authorizes the general public to access and use private coastal land, eviscerating the owners' constitutionally protected right to exclude others from those areas, without just compensation.

63. The Act takes an interest in RIACT members' real property, without just compensation.

64. The Act takes a migratory or rolling public easement on and from RIACT members' land, and burdens their titles, without just compensation.

65. The Act unsettles and frustrates RIACT members' legitimate expectations related to their property boundaries and their rights of ownership and use.

66. The Act harms the privacy and peaceable enjoyment of RIACT member properties, without compensation.

67. The Act diminishes and injures the use, value, and marketability of RIACT member properties.

68. By imposing a "public beach" or public access easement on private land lying between the mean higher high water mark and 10 feet inland of the seaweed line, the Act takes private property on its face, under color of state law.

69. The Act effects an ongoing violation of RIACT members' federal constitutional rights.

## RELIEF SOUGHT

Wherefore, Plaintiff respectfully requests that the Court:

1. Declare that the Act takes a public easement from RIACT members and deprives them of their right to exclude non-owners from private beachfront property without just compensation;

2. Declare that the Act effects an unconstitutional taking of private property lying between the MHW line and 10 feet inland of the seaweed line;

3. Declare that the Act unconstitutionally takes RIACT members' properties for public beach use;

4. Preliminarily and permanently enjoin implementation and enforcement of the Act;

5. Any other available relief; and

6. Attorneys' fees and costs under 42 U.S.C. § 1988.

Dated: August 7, 2023.

Respectfully submitted,

/s/ J. David Breemer
J. DAVID BREEMER, *Pro Hac Vice*
Cal. Bar No. 215039
JEREMY TALCOTT, *Pro Hac Vice*
Cal. Bar No. 311490
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
JBreemer@pacificlegal.org
JTalcott@pacificlegal.org

/s/ Daniel J. Procaccini
DANIEL J. PROCACCINI (#8552)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Telephone: (401) 274-7200
Facsimile: (401) 351-4607
dprocaccini@apslaw.com

*Counsel for Plaintiff*