UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                       )
RHODE ISLAND ASSOCIATION OF            )
COASTAL TAXPAYERS,                     )
                                       )
            Plaintiff,                 )
                                       )
     v.                                )    C.A. No. 23-278 WES
                                       )
PETER NERONHA, in his official         )
capacity as Attorney General of        )
Rhode Island; JEFFREY WILLIS,          )
in his official capacity as            )
Executive Director of the              )
Rhode Island Coastal Resources         )
Management Council; and                )
TERRENCE GRAY, in his official         )
capacity as Director of the            )
Rhode Island Department of             )
Environmental Management,              )
                                       )
            Defendants.                )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

In this suit, Plaintiff Rhode Island Association of Coastal Taxpayers ("RIACT") challenges a new law – H. 5174 ("the Act") – expanding public beach access. RIACT's single-count Complaint contends that the Act amounts to an unconstitutional taking in violation of the Fifth Amendment (applied to the states through the Fourteenth Amendment). See generally Second Am. Compl. ("Am. Compl."), ECF No. 21. Defendants move to dismiss the Complaint on two grounds, and both can be reduced to an argument that Plaintiff seeks the wrong relief from the wrong defendants before the wrong court. Because the Court

agrees with Defendants that Plaintiff lacks the requisite standing to sue, the case is dismissed for that reason.

I.  Background

RIACT is a group of tax-paying owners and interest-holders of private beachfront property in the state, whose purpose is "promoting, advocating for, and defending coastal property rights and beach access rules that balance beach access needs with property rights." Am. Compl. ¶¶ 11-12.  Before the Act, the boundary of beachfront property was defined by the "mean high water" ("MHW") line, determined by averaging the high tide line over about nineteen years.  Id. ¶ 24.  That meant the beach was public from the MHW line to the water but private inland from that line.  Id. ¶ 4.

Relying on the Rhode Island Constitution's public right to shore access,[1] the General Assembly reconfigured the boundary in the Act, changing it from the MHW line to the "recognizable high tide" line, which it demarcated as ten "feet from the seaweed line." Id. ¶ 4.  The

---

[1] The Rhode Island Constitution guarantees "[t]he people shall continue to enjoy and freely exercise all the rights of fishery, and the privileges of the shore, to which they have been heretofore entitled under the charter and usages of this state, including but not limited to fishing from the shore, the gathering of seaweed leaving the shore to swim in the sea and passage along the shore; and they shall be secure in their rights to the use and enjoyment of the natural resources of the state with due regard for the preservation of their values[.]" R.I. Const. Art. I, § 17.

2

effect is an expansion of public access to the land that lies between the MHW line and ten feet inland from the seaweed line.[2]  See id.

The Takings Clause of the United States Constitution prohibits taking "private property [] for public use, without just compensation," and the Supreme Court has made clear "that government authorized invasions of property — whether by plane, boat, cable, or beachcomber — are physical takings requiring just compensation."  Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2074 (2021) (holding that an access regulation amounting to a physical invasion, even if not constant, of private property is a per se taking).  RIACT claims the Act creates an amorphous and unpredictable public easement that moves along with the seaweed line.  See Am. Compl. ¶ 8.  It seeks no damages, and instead asks for a declaration that the Act is unconstitutional and an injunction prohibiting the Act's implementation and enforcement.  See id. 14.

Named as Defendants are Rhode Island Attorney General Peter Neronha, Rhode Island Coastal Resources Management Council ("CRMC") Executive Director Jeffrey Willis, and Rhode Island Department of Environmental Management ("DEM") Director Terrence Gray, all sued in their official capacities.  Id. ¶ 16.  All promptly moved to dismiss.  Mot. to Dismiss, ECF No. 22.

---

[2] The Legislature did so in reliance on the findings of a special legislative commission — the Shoreline Commission — whose findings are not now relevant to the justiciability questions before the Court.

II. Analysis

"[A] plaintiff has standing only if he [or she] can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" California v. Texas, 141 S. Ct. 2104, 2108 (2021) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)).[3] These two components of standing are sometimes referred to as traceability and redressability. RIACT carries the burden of demonstrating both. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (party invoking jurisdiction must prove it).

RIACT maintains it has associational standing to sue. Associational standing turns on the standing of the members, Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977),

---

[3] This is the correct standard. RIACT contends that Ex parte Young cases follow a more flexible standing analysis. See Opp'n 12, ECF No. 23 ("[I]n the Ex parte Young context, the causal connection needed for standing simply requires defendants to have 'some connection' to enforcement of the law causing the injury."); Ex parte Young, 209 U.S. 123, 157 (1908). Some support for this modified analysis exists, see Cressman v. Thompson, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013); Planned Parenthood of Ind., Inc. v. Wasden, 376 F.3d 908, 919 (9th Cir. 2004), but no such support comes from the First Circuit, which continues to treat the two as distinct, see Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 51 (1st Cir. 2020) (viewing sovereign immunity as an alternative ground to dismissal, apart from the plaintiff's failure to show Article III standing); Shell Oil Co. v. Noel, 608 F.2d 208, 213 (1st Cir. 1979) (preferring to "dispose of case" on Article III grounds rather than delve into unsettled Ex parte Young questions). Maintaining that distinction makes good sense given the Supreme Court has called standing "a bedrock constitutional requirement that this Court has applied to all manner of important disputes." United States v. Texas, 143 S. Ct. 1964, 1969 (2023). Following First Circuit precedent, the Court keeps to the familiar framework.

and asks whether the members themselves have standing to sue, see id.; Housatonic River Initiative v. U.S. EPA, New England Region, 75 F.4th 248, 264 (1st Cir. 2023).[4]

RIACT identifies two members with affected properties: Stilts, LLC, which owns the Charlestown home in which RIACT's President David Welch lives, and Joseph Simonelli, who owns beachfront property in Westerly. Am. Compl. ¶¶ 14, 42. Stilts' title includes property between the MHW line and ten feet inland of the MHW line, id. ¶¶ 40-41, and Simonelli's title extends to the Atlantic Ocean, id. ¶ 42. These individual members are clearly injured by the Act, so RIACT is a proper association for standing purposes.

But RIACT must also show that the Defendants sued are the ones who acted wrongfully and are able to right the wrong specified in the Complaint. If they cannot, the claim is not redressable and there is no standing. See Pavlock v. Holcomb, 35 F.4th 581, 588 (7th Cir. 2022). The allegedly wrongful act here was the enactment of H. 5174 by the General Assembly (and signed by the Governor). But Plaintiff cannot sue either, nor can it sue the state of Rhode Island because the Eleventh Amendment of the United States Constitution creates sovereign immunity. Plaintiff has attempted to get around this bar to the front door of the

---

[4] The only issue is whether the members have standing to sue; none of the remaining elements are seriously disputed. Separately, Defendants also assert that sovereign immunity guaranteed by Eleventh Amendment immunity bars the action and requires dismissal. Because the Court finds there is no standing, it need not reach this issue.

5

federal court by suing the heads of three state agencies who enforce beach access generally. RIACT essentially asks for a declaration that the Act creates a public easement (which is a taking) without just compensation, and a ban on implementation and enforcement by the Attorney General, the CRMC, and the DEM. Am. Compl. 14.

But a statute that generally authorizes the Attorney General or other state agency heads to institute policies and prosecute civil actions is not sufficient to confer standing to sue them. Lewis v. Governor of Ala., 944 F.3d 1287, 1300 (11th Cir. 2019); Russell v. Lundergan-Grimes, 784 F.3d 1037, 1048 (6th Cir. 2015) ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." (quoting 1st Westco Corp. v. Sch. Dist. of Phila., 6 F.3d 108, 113 (3rd Cir. 1993))). Nor is "the mere fact that an attorney general has a duty to prosecute all actions in which the state is interested enough to make [the Attorney General] a proper defendant in every such action." Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979).

RIACT fears prosecution or citation if its members attempt to eject or dissuade people from encroaching on their property. Pre-enforcement injunctions against prosecutorial agencies are a rare bird; to succeed RIACT must show its members "intend to violate or are violating an existing law," and "the threat of prosecution is sufficiently real to provide standing." Int'l Game Tech. PLC v. Garland, 628 F. Supp. 3d 393, 400 (D.R.I. 2022); see Susan B. Anthony List v. Driehaus, 573 U.S.

6

149, 159-61 (2014) (blessing pre-enforcement suits when there is a credible fear of prosecution). Defendants say no such threat exists, and no evidence suggests RIACT's members plan to take any unlawful actions that would result in citation or prosecution.

Thus, RIACT has failed to trace the injury claimed (the taking) to the Defendants sued as required by Lujan. See Lujan, 504 U.S. at 561. Dressing up the claim as a "fear of prosecution" is like putting lipstick on a pig. Standing cannot rest solely on speculation, see Roe v. Healey, No. 22-1740, 2023 WL 5199870, at *5 (1st Cir. Aug. 14, 2023) ("A threatened harm that is too attenuated or too speculative does not provide standing to seek an injunction."), and the Court cannot grant RIACT's members a license to exclude would-be trespassers.

Not only is the claim not traceable to those Defendants, they cannot redress the injury. An "injury isn't redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them[.]" Supp. Working Animals, Inc. v. Governor of Fla., 8 F.4th 1198, 1205 (11th Cir. 2021) (citing Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1255 (11th Cir. 2020)). If RIACT were successful in this case, it would do nothing to restrain nonparties, including the public whose very presence is the alleged harm, and state and local police, who have separate enforcement authority.

7

The same can be said of RIACT's claim that the Act creates public rights-of-way on its members' properties, and Defendants can penalize members if they block those rights-of-way. See Am. Compl. ¶ 18. Again, there is a disconnect between the harm RIACT's members fear and the enforcement of the Act:  Section 11-44-24 protects rights-of-ways - the routes that run from public roads and parking areas adjacent to the water down to it; they run (typically) perpendicular to the water. See Cavanaugh v. Town of Narragansett, No. WC 91-0496, 1997 WL 1098081, at *3 (R.I. Super. Oct. 10, 1997).  Blocking these rights of way was a violation before enactment of the Act; and ongoing enforcement § 11-44-24 has nothing to do with the members' alleged injuries.

The suggestion that the CRMC, with the DEM, will "develop and disseminate information to educate the public and property owners about the rights set out in this section," Am. Compl. ¶ 19, and, along with the Attorney General, will "determine appropriate language and signage details for use at shoreline locations," id. ¶ 20, gets RIACT no closer to standing.  Enjoining these actions might theoretically reduce the number of beachgoers who traverse the area between the MHW line and the new line but will do nothing to cure the alleged constitutional harm – the taking of a portion of the beach they walk on.

Standing is not empty formalism, and, because of it, "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." Whole Woman's Health v. Jackson, 142 S. Ct. 522, 537 (2021).

This proves true here: Because RIACT cannot tie the named Defendants to the constitutional harm allegedly inflicted by the Act or its cure, the case is not properly in federal court. And because lack of standing is dispositive, the Court need not address Eleventh Amendment immunity.

III. Conclusion

For the above stated reasons, the Court lacks jurisdiction and Defendants' Motion to Dismiss, ECF No. 22, is granted, and Defendants' earlier Motion to Dismiss, ECF No. 20, and RIACT's Motion for a Preliminary Injunction, ECF No. 17, are denied as moot.

IT IS SO ORDERED.

*[signature]*

William E. Smith
District Judge
Date: September 19, 2023